IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

ANGELA BOOKER,

           Plaintiff,

v.                                            CIVIL ACTION NO.  2:14-cv-11523

FAYETTE COUNTY SHERIFF'S DEPARTMENT, et al.,

           Defendants.

**MEMORANDUM OPINION & ORDER**
(*Defendants' Motions for Summary Judgment*)

Pending before the court is Defendants Fayette County Sheriff's Department and Deputy J.M. Browning's Motion for Summary Judgment [Docket 51] and Defendant Greenbrier County Sheriff's Department's Motion for Summary Judgment [Docket 53] (collectively "the motions").[1] The plaintiff did not file a response opposing these motions, and the time to file a response has now passed. Although Federal Rule of Civil Procedure 55 provides default procedures, those procedures do not govern the failure of a party to respond to a motion for summary judgment. *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993) ("Although the failure of a party to respond to a summary judgment motion may leave uncontroverted those facts established by the motion, the moving party must still show that the uncontroverted facts entitle the party to 'judgment as a matter of law.'"). Therefore, despite being unopposed, the court will review the pending motions under its usual summary judgment standard to determine whether the defendants are entitled to judgment as a matter of law. For the reasons discussed below, Defendants Fayette County Sheriff's Department and Deputy J.M.

---

[1] Because the defendants' motions present nearly identical issues, I rule on and refer to them together.

Browning's Motion for Summary Judgment [Docket 51] and Defendant Greenbrier County Sheriff's Department's Motion for Summary Judgment [Docket 53] are **GRANTED**.

## I. Background

This case arises out of a dispute that took place at a high school basketball game on March 2, 2012. The Fayette County Board of Education ("Board") hired Deputy J.M. Browning of the Fayette County Sheriff's Department to provide security at the basketball game. (Def. Board's Mot. for Summ. J. ("Board's Mot.") [Docket 49] ¶ 2). Cpl. John Doe of the Greenbrier County Sheriff's Department was hired for the same reason. At some point during the game, the plaintiff, Angela Booker, her daughter, and her nephew became involved in an altercation, (Am. Compl. [Docket 12] ¶¶ 10-14), which began with students and patrons from rival teams making derogatory comments to each other. (Booker Dep. [Docket 51-2] 24:6-10). As the altercation escalated, the gym "erupted," causing many people to stand up and stopping the game. (*Id.* 36:7, 47:22-48:1). According to the plaintiff, Cpl. Doe grabbed her nephew and told him to leave. (*Id.* ¶ 15). The plaintiff explained the situation to Cpl. Doe, who advised her to keep her nephew calm, but ultimately permitted him to stay at the game. (*Id.* ¶¶ 16-17). Before heading back to her seat, the plaintiff spoke with one of her daughter's friends and asked: "Who was that little bitch that was going to jump on my daughter?" (*Id.* ¶ 20). Hearing this remark, Cpl. Doe informed the plaintiff that she would have to leave the game and proceeded to grab her by the right arm to escort her out. (*Id.* ¶ 25). After observing the interaction between the plaintiff and Cpl. Doe, Deputy Browning grabbed the plaintiff's left arm and assisted Cpl. Doe in pulling the plaintiff down the bleachers to remove her from the game. (*Id.*). Both officers released the plaintiff when they reached the floor of the gymnasium. (*Id.* ¶ 32).

On March 3, 2014, the plaintiff filed her Complaint against the Fayette County Sheriff's Department, the Greenbrier County Sheriff's Department, Deputy J.M. Browning, Cpl. John Doe, and the Board (collectively, "the defendants") advancing numerous claims under the United States Constitution, the West Virginia Constitution, and West Virginia state law "aris[ing] out of the Defendants' unjustified use of force[.]" (Compl. [Docket 1]). In response to the defendants' motions to dismiss, the plaintiff amended her complaint on May 13, 2014. (Am. Compl. [Docket 12]). Subsequently, the defendants filed a Joint Motion to Dismiss [Docket 14], which I denied as untimely. (Order [Docket 16]; *see also* Mem. Op. & Order [Docket 22] (denying the defendants' Motion to Reconsider [Docket 17])). In accordance with the Scheduling Order [Docket 26], the defendants filed separate motions for summary judgment on or before April 2, 2015, including the defendants' Motions for Summary Judgment [Dockets 51 & 53] currently before the court. As noted above, the plaintiff never responded to these motions.

## II.     Legal Standard

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*,

477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Felty v. Graves Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *Ross v. Comm'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *abrogated on other grounds*, *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).

### III. Discussion

#### A. 42 U.S.C. § 1983

The plaintiff brings an excessive force claim under 42 U.S.C. § 1983, alleging that the defendants violated her procedural and substantive rights pursuant to the Fourth and Fourteenth amendments to the United States Constitution and their counterparts in the West Virginia Constitution. (Am. Compl. [Docket 12] ¶¶ 60-62).[2]

##### i. Fayette & Greenbrier County Sheriff's Departments

As an initial matter, the defendants contend that a Sheriff's Department is not a proper party because it does not meet the definition of a "person" under § 1983. 42 U.S.C. § 1983 (2012) ("Every *person* who, under color of any statute . . . ." (emphasis added)). The Northern District of West Virginia agrees and has repeatedly held that political subdivisions of

---

[2] I agree with the defendants that the plaintiff's attempt to assert a § 1983 claim under the Fourteenth Amendment is unclear and unsupported because the plaintiff was neither an arrestee nor a pretrial-detainee. *See Sawyer v. Asbury*, 537 F. App'x 283, 290 (4th Cir. 2013) ("[C]laims of post-arrest excessive force against an arrestee or pre-trial detainee . . . are governed by the Due Process Clause of the Fourteenth Amendment[.]"). Accordingly, the defendants' motions for summary judgment with regard to the Fourteenth Amendment are **GRANTED** and I proceed to review the plaintiff's more cognizable claim under the Fourth Amendment.

4

municipalities, such as a sheriff's department, are not "persons" subject to suit under § 1983. *See Morton v. Welcome*, No. 3:12CV126, 2013 U.S. Dist. LEXIS 106516, at *4 (N.D. W. Va. May 23, 2013) ("The Berkeley County Sheriff's Department and the Martinsburg City Police Department are not proper defendants because these entities are not persons subject to suit under 42 U.S.C. § 1983."); *see also Buhro v. Dent*, No. 5:13-CV-81, 2014 WL 460937, at *3 (N.D. W. Va. Feb. 5, 2014) (explaining that the defendant sheriff's department and police department in *Morton* "were not proper party defendants as they are integral parts of the city/county government and are merely the vehicle through which the city/county government fulfills its policing functions"); *Terlosky v. Matthews*, No. 5:11CV26, 2011 WL 1302238, at *2 (N.D. W. Va. Mar. 31, 2011) (explaining that the Sheriff's Department "has no status independent of the Sheriff" and is not a governing body of the county). Furthermore, in *Terlosky*, the court indicated that the proper party in these situations is the county commission. 2011 WL 1302238, at *2 ("As the Fourth Circuit has observed, 'in the realm of county law enforcement,' it is not the office of the sheriff but 'the sheriff [who] is the duly delegated policy maker for the county.' *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 874 (4th Cir. 1989). Therefore a claim against the office of the sheriff is 'effectively a claim against the governing body of the . . . County.'"). Consistent with these decisions, I **FIND** no genuine issues of material fact as to whether the Fayette and Greenbrier County Sheriff's Departments meet the definition of a "person" under § 1983. Therefore, the defendants' motions with regard to the plaintiff's federal claim against the Sheriff's Departments are **GRANTED**.

### ii. Deputy Browning

The defendants contend that Deputy Browning is entitled to qualified immunity from the plaintiff's excessive force claim. A two-part test governs whether an officer is entitled to

summary judgment on the basis of qualified immunity. *Smith v. Ray*, 781 F.3d 95, 100 (4th Cir. 2015). The first question is whether the officer's conduct violated a federal right. Here, the plaintiff alleges that Deputy Browning violated her Fourth Amendment rights by using excessive force. The second question is "whether the right was clearly established at the time the violation occurred such that a reasonable person would have known that his conduct was unconstitutional." *Id.*

First, I must determine whether Deputy Browning violated the plaintiff's constitutional rights under the Fourth Amendment. If Deputy Browning did not violate the plaintiff's rights, immunity is unnecessary, and the analysis ends. *Henry v. Purnell*, 652 F. 3d 524, 531 (4th Cir. 2011). The Fourth Amendment protects an individual's right to be free from seizures effectuated by excessive force. *Webb v. Raleigh Cnty. Sheriff's Dep't*, 761 F. Supp. 2d 378, 389 (S.D. W. Va. 2010). Courts analyze excessive force claims under the Fourth Amendment using an objective reasonableness standard. *Smith*, 781 F.3d at 100-01 (4th Cir. 2015) ("The officer's actions do not amount to excessive force if they are objectively reasonable in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation." (internal quotation marks and citations omitted)). In *Greenridge v. Ruffin*, 927 F.2d 789 (4th Cir. 1996), the Fourth Circuit Court of Appeals emphasized that the reasonableness of an officer's use of force is determined from the perspective of a reasonable officer on the scene, or at the moment. *Webb*, 761 F. Supp. 2d at 389 (discussing *Greenridge*); *see also Schultz v. Braga*, 455 F.3d 470, 477 (4th Cir. 2006) ("[T]he immunity inquiry must be filtered through the lens of the officer's perceptions at the time of the incident in question."). Further, I note that "[t]he qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly

incompetent or those who knowingly violate the law." *Henry*, 652 F.3d at 534 (internal quotation marks omitted).

In her Amended Complaint, the plaintiff alleges that Deputy Browning "grabbed [her] left arm and pulled [her] down the bleachers backwards." (Am. Compl. [Docket 12] ¶ 25). The plaintiff requested to be released multiple times, but in response, Deputy Browning proceeded to tighten the grip on her arm. (*Id.* ¶¶ 26-27). As a result, Deputy Browning "caused an injury to [her] shoulder, for which she was required to seek medical attention." (*Id.* ¶ 35). It is undisputed that Deputy Browning was hired to provide security at the basketball game, which would include handling altercations—like the one that occurred between the plaintiff and a rival team member—and problematic attendees—like the plaintiff. (*See* Browning Aff. [Docket 51-3] ¶ 4 ("Toward the end of the game, I noticed a commotion in the stands and proceeded to investigate."); *see also id.* ¶ 6 (stating she relied on her training and experience as a law enforcement officer)). In her deposition, the plaintiff described the altercation as an "uproar" and admitted it was severe enough that the game stopped and many people stood up in the bleachers. (Booker Dep. [Docket 51-2] 47:22-48:1 (agreeing that "things were getting a little bit hostile")). Deputy Browning attests that she heard the plaintiff curse at a student and that the plaintiff subsequently refused to leave the game, which is why she and Cpl. Doe held onto the plaintiff's arms to escort her out. (Browning Aff. [Docket 51-3] ¶¶ 5-6 (explaining that the plaintiff "was loudly protesting and causing a disturbance" and that she "physically resisted and verbally protested" her removal)). The plaintiff insisted she should not be removed, further illustrating her noncompliance with the officers' requests. Even if I disregard Deputy Browning's affidavit—to credit solely the plaintiff's version of events—there is no question that the plaintiff was involved in a serious altercation and cursed at a student. Therefore, in an attempt to maintain

7

order and protect the other patrons, the officers were justified in removing the plaintiff from the game.

Viewing the evidence in a light most favorable to the plaintiff, I **FIND** that a reasonable officer would have utilized the same amount of minimal force under the circumstances. Accordingly, Deputy Browning did not violate the plaintiff's constitutional rights, and the defendants' motion with regard to the plaintiff's federal claim against Deputy Browning is thus **GRANTED**.

### iii. Cpl. Doe

Cpl. Doe's seizure of the plaintiff was effectuated with little, if any force. In her deposition, the plaintiff admitted that Cpl. Doe did not injure her in any way. (Booker Dep. [Docket 53-1] 107:18-108:1). Further, she stated that Cpl. Doe "pretty much just took the – my other arm to kind of help to balance me and get me down the bleachers and walk outside." "There is simply no indication that [Cpl. Doe] . . . used any particular force as would be unjustified under the circumstances in the mind of a reasonable officer." *Davis v. Bacigalupi*, 711 F. Supp. 2d 609, 624 (E. D. Va. 2010). Viewing the evidence in a light most favorable to the plaintiff—illustrated by her own testimony—there are no genuine issues of material fact as to whether Cpl. Doe used excessive force in attempting to escort the plaintiff out of the game. Accordingly, the defendant's motion with regard to the plaintiff's federal claim against Cpl. Doe is **GRANTED**.

### B. West Virginia Constitution

The plaintiff alleges that the defendants subjected her to unnecessary and excessive force in violation of her constitutional rights guaranteed under Article III, Section 6 of the West

Virginia Constitution, which incorporates the constitutional rights guaranteed under the First, Fourth, and Fourteenth Amendments. The West Virginia Constitution provides:

> The rights of the citizens to be secure in their houses, persons, papers and effects, against unreasonable searches and seizures, shall not be violated. No warrant shall issue except upon probable cause, supported by oath or affirmation, particularly describing the place to be searched, or the person or thing to be seized.

W. Va. Const. art. III, § 6 (West 2015). As an initial matter, I agree with the defendants that the plaintiff frames her allegations in the context of excessive force under the Fourth Amendment, and has failed to present sufficient—or any—evidence to support claims under the First and Fourteenth Amendments. The First Amendment protects the right to be free from retaliation by a public official for exercising the right to speak. *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). However, the plaintiff does not specifically allege retaliation in her Amended Complaint or indicate what speech she claims was protected. The Fourteenth Amendment is likewise inapplicable here. *See supra* note 2. Although the plaintiff alleges a cognizable claim under the Fourth Amendment, as discussed more fully *supra* related to the plaintiff's § 1983 claim, I **FIND** no genuine issues of material fact with regard to the reasonableness of the officers' use of force under the circumstances. Accordingly, the defendants' motions with regard to the plaintiff's state constitutional claims are **GRANTED**.[3]

### C. Negligent Hiring, Retention, and/or Supervision

In her Amended Complaint, the plaintiff alleges that the Sheriff's Departments "failed to exercise reasonable care in the hiring, retention, and/or supervision of its employees," including Deputy Browning and Cpl. Doe. (Am. Compl. [Docket 12] ¶ 50). According to the defendants, the plaintiff has not conducted any discovery to develop these claims. (Defs. Fayette County Sheriff's Department & J.M. Browning's Mem. of Law in Supp. of Their Mot. for Summ. J.

---

[3] Because I **GRANT** the defendants' motions for summary judgment on the plaintiff's state constitutional claims based on a lack of sufficient evidence, I need not address their arguments with regard to vicarious liability.

[Docket 52], at 15). Without any evidence from the plaintiff detailing the employment relationship between the officers and their respective Sheriff's Departments, no reasonable juror could find in favor of the plaintiff on these claims. (*See Mosley v. Wachovia Mortg. Corp.*, No. 5:10-cv-01203, 2012 WL 9099, at *7 (S.D. W. Va. Jan. 11, 2012) ("The Court finds that there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." (internal quotation marks and citation omitted)). Accordingly, the defendants' motions with regard to the plaintiff's negligent hiring, retention, and/or supervision claim are **GRANTED**.

### D.  Other State Law Claims

In addition to her state constitutional claims, the plaintiff alleges that the officers' actions constituted battery and intentional infliction of emotional distress. In response, the Fayette County Sheriff's Department contends that Deputy Browning is entitled to statutory immunity pursuant to the West Virginia Code. This argument is equally applicable to Cpl. Doe. The relevant statute provides:

> An employee of a political subdivision is immune from liability unless . . . (1) His or her acts or omissions were manifestly outside the scope of employment or official responsibilities; (2) His or her acts or omissions were malicious purpose, in bad faith, or in a wanton or reckless manner; or (3) Liability is expressly imposed upon the employee by a provision of this code.

W. Va. Code 29-12A-5(b) (West 2015).[4]

"An act specifically or impliedly directed by the master, or any conduct which is an ordinary and natural incident or result of that act, is within the scope of the employment." Syl. Pt. 6, *Courtless v. Jolliffe*, 507 S.E.2d 136 (W. Va. 1998) (quoting *Cochran v. Michaels*, 157 S.E.

---

[4] The determination of whether an employee has acted within the scope of employment is ordinarily a question of fact, but, I am "in no way precluded from making a determination, as a matter of law, as to 'scope of employment' where there are no disputed facts." *W. Va. Reg'l Jail & Corr. Facility Auth. v. A.B.*, 766 S.E.2d 751, 768 (W. Va. 2014).

173 (W. Va. 1931)). The duties of law enforcement officers, like Deputy Browning and Cpl. Doe, "are *broadly* characterized as discretionary, requiring the use of . . . discretionary judgments and decisions." *W. Va. Reg'l Jail*, 766 S.E.2d at 768 (emphasis in original). In making this determination, I consider the totality of the circumstances, "including the character of the employment, the nature of the wrongful deed, the time and place of its commission and the purpose of the act." *Id.* at 769 (emphasis omitted). The purpose of the act is critical, in that the servant is acting within the scope of employment if his or her conduct "is actuated, at least in part, by a purpose to serve the master." *Id.* The officers were hired to provide security at the basketball game. Consequently, their purpose was to maintain a safe and orderly environment, which they actuated by removing the disruptive plaintiff. This decision—in light of the plaintiff's conduct—was within the officers' broad discretion and judgment. Further, as discussed more fully *supra* related to the plaintiff's § 1983 claim, the officers' use of force was reasonable under the circumstances. *See id.* (explaining that if forced is used, the servant remains within the scope of employment if "the use of force is not unexpectable by the master").

Similarly, the plaintiff has failed to present any evidence that the officers acted with malice, bad faith, or in a wanton or reckless manner, outside the mere allegations in her Amended Complaint. *See Mosley*, 2012 WL 90099, at *7 ("At this stage in [the] litigation, when confronted with a motion that no genuine disputes of material facts exist, a non-moving party must go beyond their pleadings to demonstrate the existence of a genuine dispute of material fact."). Therefore, I **FIND** no genuine issues of material fact as to whether the officers are entitled to statutory immunity. Accordingly, the defendants' motions with regard to the plaintiff's battery and intentional infliction of emotional distress claims are **GRANTED**.

## IV. Conclusion

For the reasons discussed above, I **GRANT** summary judgment in favor of the defendants on all claims.[5]

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: May 14, 2015

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

---

[5] Because I **GRANT** summary judgment in favor of the defendants on all substantive claims, I need not specifically address their arguments with regard to punitive damages.